IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | October 30, 2024 |
| | ) | |
| -versus- | ) | Charleston, SC |
| | ) | |
| ANGEL JOAQUIN DANIEL FLORES, | ) | 2:22-139-15 |
| | ) | |
| Defendant. | ) | |


TRANSCRIPT OF CHANGE OF PLEA

BEFORE THE HONORABLE BRUCE HOWE HENDRICKS
UNITED STATES DISTRICT JUDGE, presiding


A P P E A R A N C E S:

For the Government:    CHRISTOPHER S. LIETZOW, AUSA
                       US Attorney's Office
                       151 Meeting Street, Suite 200
                       Charleston, SC 29401


For the Defendant:     DAVID P. MCCANN, ESQ.
                       PO Box 2344
                       Mt. Pleasant, SC 29465


Court Reporter:        KAREN E. MARTIN, RMR, CRR
                       PO Box 835
                       Charleston, SC 29402


Proceedings reported by stenographic court reporter.
Transcript produced with computer-aided transcription
software.

1                    Wednesday, October 30, 2024

2          (WHEREUPON, court was called to order at 10:31 AM)

3              **THE COURT:**  Thank you.  Take your seats, please.

4              Okay.  Mr. US Attorney, you may call the case.

5              **MR. LIETZOW:**  This is United States vs. Angel

6    Flores.  It's Case No. 2:22-139-15.  Mr. Flores is

7    represented by Mr. David McCann.  We're before Your Honor

8    for a change of plea.  Mr. Flores is pleading guilty to

9    Count 1 of the second superseding indictment which charges

10   him with conspiracy to possess with intent to distribute

11   and distribute 500 or more grams of meth and a quantity of

12   marijuana.

13             **THE COURT:**  Okay.  Does he need an interpreter?

14             **MR. McCANN:**  No, he does not, Your Honor.

15             **THE COURT:**  Okay.  And is this with a plea

16   agreement or without a plea agreement?

17             **MR. McCANN:**  With a plea agreement, Your Honor.

18   It's been filed.

19             **THE COURT:**  And it's not an 11(c)(1)(C)?

20             **MR. LIETZOW:**  It is an 11(c)(1)(C).

21             **THE COURT:**  Okay.  All right.  Thanks.

22             And let's swear in Mr. Flores.

23             **THE CLERK:**  Yes, ma'am.

24             Please stand, sir.

25        (WHEREUPON, the defendant was sworn.)

1    THE DEFENDANT:  Yes, ma'am.

2    THE CLERK:  Thank you.

3    THE COURT:  Okay.  Mr. McCann, have you been

4  able to communicate just fine with Mr. Flores?

5    MR. McCANN:  I have, Your Honor.

6    THE COURT:  And have you explained to him the

7  charge or charges contained in the indictment and the

8  possible punishment and his constitutional rights?

9    MR. McCANN:  Yes, I have.

10    THE COURT:  In your opinion, does he understand

11  the charges and punishment and his right to a jury trial?

12    MR. McCANN:  Yes, he does.

13    THE COURT:  And how does he indicate to you he

14  wishes to plead, guilty or not guilty?

15    MR. McCANN:  He wishes to plead guilty to Count

16  1 of the indictment, Your Honor.

17    THE COURT:  And you agree with that decision

18  yourself?

19    MR. McCANN:  Yes.

20    THE COURT:  From your own investigation,

21  Mr. McCann, of the facts and circumstances of this case,

22  do you feel that the Government could produce sufficient

23  evidence to convince a jury of his guilt and that if he

24  were to go to trial that his guilt would be probable?

25    MR. McCANN:  Yes, I do.

1          THE COURT:  Has he been ordered to submit to a

2    mental examination?

3          MR. McCANN:  No, he has not.

4          THE COURT:  And do you have any doubt as to his

5    competence to plead?

6          MR. McCANN:  None.

7          THE COURT:  So, Mr. Flores, you're now under

8    oath.  And if you answer any of my questions falsely, your

9    answers may later be used against you in another

10   prosecution for perjury or for making a false statement.

11   Do you understand?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  You're able to understand and speak

14   the English language it looks like?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Okay.  So I've been informed that

17   you wish to plead guilty, is that true?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  But before I can accept that plea,

20   I've got to make sure that your plea is made freely and

21   voluntarily so I am going to ask you some questions.  If

22   you don't understand one of my questions, just let me know

23   and I'll repeat it.  If you need to stop and talk to your

24   lawyer privately and confidentially about anything, just

25   let me know and I'll let y'all have a time out.  Okay?

```
1                THE DEFENDANT:  Um-hmm.

2                THE COURT:  So how old are you?

3                THE DEFENDANT:  I'm 34.

4                THE COURT:  Where were you born?

5                THE DEFENDANT:  In Turlock, California.

6                THE COURT:  How far did you go in school?

7                THE DEFENDANT:  Tenth grade.

8                THE COURT:  What was the last job you had?

9                THE DEFENDANT:  I worked at a -- it was like in

10   a packing company in Antigua.

11               THE COURT:  Have you ever been treated for

12   alcohol abuse or drug abuse or a mental illness?

13               THE DEFENDANT:  No, ma'am.

14               THE COURT:  Have you taken any kind of medicine,

15   drugs, or alcohol in the last 24 hours?

16               THE DEFENDANT:  I'm diabetic.  I took insulin.

17   Metformin.

18               THE COURT:  Are you aware of any physical,

19   emotional, or nervous problem that might keep you from

20   understanding what you're doing?

21               THE DEFENDANT:  No.

22               THE COURT:  Do you understand that you're

23   pleading guilty?

24               THE DEFENDANT:  Yes, ma'am.

25               THE COURT:  And Mr. McCann, do you agree that
```

1  your client knows and understand what is he's doing this

2  morning?

3          **MR. McCANN:**  I do believe that, Your Honor.

4          **THE COURT:**  It appears to me that Mr. Flores is

5  competent to plead to the charges and I so find now for

6  purposes of the record.

7          Are you satisfied with the way that your lawyer,

8  Mr. McCann, has advised you and represented you?

9          **THE DEFENDANT:**  Yes, ma'am.

10          **THE COURT:**  Have you talked to him for as often

11  and as long as you felt it was necessary for him to

12  represent you?

13          **THE DEFENDANT:**  Yes, ma'am.

14          **THE COURT:**  Do you need anymore time to talk to

15  him this morning?

16          **THE DEFENDANT:**  No.

17          **THE COURT:**  Have you understood all the talks

18  and conversations that you've had with Mr. McCann?

19          **THE DEFENDANT:**  Yes, ma'am.

20          **THE COURT:**  Has he done everything for you that

21  you've asked him to do?

22          **THE DEFENDANT:**  Yes, ma'am.

23          **THE COURT:**  Has he failed to do anything you

24  asked him to do?

25          **THE DEFENDANT:**  No.

1        THE COURT:  Are you completely satisfied with
2    your lawyer's services?

3        THE DEFENDANT:  Yes, ma'am.

4        THE COURT:  Do you have any complaint at all
5    that you want to make to the Court about your lawyer?

6        THE DEFENDANT:  No.

7        THE COURT:  So, Mr. Flores, under the
8    constitution and laws of the United States, you've got a
9    right to plead not guilty.  If you plead not guilty,
10   you're entitled to a trial by a jury during which you'd
11   have the right to the assistance of your lawyer for your
12   defense on the charges contained in the indictment.  Do
13   you understand?

14       THE DEFENDANT:  Yes.

15       THE COURT:  If you were to go to trial, you'd be
16   presumed to be innocent.  And the Government would be
17   required to prove you guilty by competent evidence and
18   beyond a reasonable doubt before you could be found
19   guilty.  And you wouldn't have to prove that you were
20   innocent.  Do you understand?

21       THE DEFENDANT:  Yes, ma'am.

22       THE COURT:  So in the course of a trial, the
23   witnesses for the Government would have to come into court
24   and testify in your presence.  And your lawyer could
25   cross-examine those prosecutor witnesses, object to

1  evidence offered by the prosecution, and offer evidence

2  for you on your behalf.  Do you understand?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  At a trial, while you'd have the

5  right to testify if you chose to do so, you'd also have

6  the right not to testify.  And no inference or suggestion

7  of guilt could be drawn from the fact that you chose not

8  to testify.  Do you understand?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  At a trial you'd have the right to

11  the issuance of subpoenas or compulsory process to compel

12  the attendance of witnesses to come into court and testify

13  in your defense.  Do you understand?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  If you plead guilty and I accept

16  your plea, you'll waive your right to that jury trial and

17  the other rights I've discussed.  There won't be a trial

18  and I'll enter a judgment of guilty and sentence you on

19  the basis of your guilty plea after considering a

20  Presentence Report.  Do you understand?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  If you plead guilty and I accept

23  your plea, you'll also have to give up your right not to

24  incriminate yourself since I'm going to ask you questions

25  about what you did in order to satisfy myself that you're

1  guilty as charged.  And you'll have to admit your guilt

2  here in open court.  Do you understand?

3         **THE DEFENDANT:**  Yes, ma'am.

4         **THE COURT:**  You may have given an incriminating

5  statement in this case.  If you plead guilty, you waive or

6  give up the right to contest or challenge whether any such

7  statement was freely and voluntarily given in accordance

8  with all your constitutional rights.  Do you understand?

9         **THE DEFENDANT:**  Yes.

10        **THE COURT:**  You may have a defense to the

11 charges against you.  Do you understand that if you plead

12 guilty, you waive or give up any defense to the charges?

13        **THE DEFENDANT:**  Yes.

14        **THE COURT:**  Is restitution an issue in this

15 case, Mr. US Attorney?

16        **MR. LIETZOW:**  We're not seeking a specific

17 monetary amount, it's just the general language found in

18 the drug statutes.

19        **THE COURT:**  Okay.  All right.

20        Are you on probation or parole for anything

21 else?

22        **THE DEFENDANT:**  No, ma'am.

23        **THE COURT:**  Okay.  Do you understand that when

24 you plead guilty, you admit the truth of the charge that's

25 made against you?

1    **THE DEFENDANT:** Yes, ma'am.

2    **THE COURT:** Now that I've discussed your rights

3    with you, do you still want to plead guilty?

4    **THE DEFENDANT:** Yes, ma'am.

5    **THE COURT:** So the offense or offenses to which

6    you're pleading guilty are felony offenses. If your plea

7    is accepted, you'll be adjudged guilty of that offense.

8    And such adjudication may deprive you of valuable civil

9    rights, such as the right to vote, right to hold public

10   office, right to possess any kind of firearm or even a

11   single piece of ammunition. Do you understand?

12   **THE DEFENDANT:** Yes, ma'am.

13   **THE COURT:** If you're not a citizen of the

14   United States, in addition to the other possible penalties

15   you're facing, a plea of guilty may subject you to

16   deportation, exclusion, or voluntary departure and prevent

17   you from obtaining US citizenship. Do you understand?

18   **THE DEFENDANT:** Yes, ma'am.

19   **THE COURT:** If the offense carries a maximum of

20   20 years or more, a probationary sentence is unavailable

21   under 18 USC 3561. Do you understand that?

22   **THE DEFENDANT:** Yes, ma'am.

23   **THE COURT:** If it's applicable, you may be

24   required to forfeit certain property to the Government.

25   Do you understand?

1    THE DEFENDANT: Yes, ma'am.

2    THE COURT: If you plead guilty, I've got to

3 determine the appropriate sentence to be imposed. Under

4 the Sentencing Reform Act, the Sentencing Commission has

5 issued guidelines for judges to follow in determining

6 sentences. I've got to consider the statutory factors

7 under 3553(a) as well as the advisory guidelines. Have

8 you and Mr. McCann talked about how the statutory factors

9 in the guidelines might affect your sentence?

10    THE DEFENDANT: Yes, ma'am.

11    THE COURT: I'm not even going to be able to

12 determine the guideline sentence for your case until after

13 a Presentence Report has been done and both you and the

14 Government have had a chance to read the Presentence

15 Report and object to it. Do you understand?

16    THE DEFENDANT: Yes.

17    THE COURT: So I guess relevant conduct could be

18 an issue, correct, Mr. US Attorney?

19    MR. LIETZOW: Your Honor, it could so far as it

20 could affect the guidelines. But just to reiterate, if

21 Your Honor accepts the 11(c)(1)(C), I think it would be a

22 moot point.

23    THE COURT: Yeah. Okay. I'll go over the idea

24 of relevant conduct just out of an abundance of caution,

25 but I understand that it's an 11(c)(1)(C). I usually

1  defer my final acceptance until the date of the

2  sentencing.  But I'll explain that as we go through it.

3          So I'm going to go over something called

4  relevant conduct with you.  That means you could be held

5  accountable for criminal conduct in which you were

6  directly involved in preparation for, during, or in the

7  course of attempting to avoid responsibility for the

8  offense with which you've been charged.  It also means

9  that where you've been involved in any jointly undertaken

10 criminal activity with other people, you'll be held

11 accountable for the conduct of the other people if it was

12 both in furtherance of your jointly undertaken activity

13 and reasonably foreseeable in connection with that

14 criminal activity.  Do you understand?

15          **THE DEFENDANT:**  Yes.

16          **THE COURT:**  Have you discussed the idea of

17 relevant conduct with Mr. McCann?

18          **THE DEFENDANT:**  Yes.

19          **THE COURT:**  After it's been determined what

20 guidelines do apply, I've got the authority in some

21 circumstances to impose a sentence that's either more

22 severe or less severe than that called for by the

23 guidelines.  Do you understand?

24          **THE DEFENDANT:**  Yes, ma'am.

25          **THE COURT:**  Under some circumstances, you or the

1  Government may have a right to appeal any sentence I might

2  impose.  Do you understand?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  So parole has been abolished.  If

5  you're sentenced to prison, you will not be released on

6  parole.  Do you understand?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  Under the Sentencing Reform Act, the

9  Court may order a term of supervised release to follow

10  imprisonment in any kind of case.  But the Court must

11  order supervised release following imprisonment if a

12  sentence of more than one year is imposed or if it's

13  required by the statute.  Do you understand?

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  So when you're on supervised

16  release, you're restricted as to the places you might go

17  and the things you might do and you must report to the

18  authorities on a regular basis.  Do you understand?

19            THE DEFENDANT:  Yes, ma'am.

20            THE COURT:  If you violate any term or condition

21  of supervised release, you could be given more time in

22  prison.  Do you understand?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  So you've heard your lawyer tell me

25  that he's explained to you the charges against you, he's

1 told you about the possible punishment and explained all

2 your rights, your constitutional rights, and he says that

3 you understand all those things. Is that true?

4         **THE DEFENDANT:** Yes, ma'am.

5         **THE COURT:** Do you understand what's going on

6 right now?

7         **THE DEFENDANT:** Yes, ma'am.

8         **THE COURT:** Have you received a copy of the

9 indictment, which is the written charges made against you?

10         **THE DEFENDANT:** Yes, ma'am.

11         **THE COURT:** Have you discussed with Mr. McCann

12 the charges in the indictment?

13         **THE DEFENDANT:** Yes, ma'am.

14         **THE COURT:** And the whole case in general?

15         **THE DEFENDANT:** Yes, ma'am.

16         **THE COURT:** Okay. So have you told Mr. McCann

17 everything you know about your case?

18         **THE DEFENDANT:** Yes, ma'am.

19         **THE COURT:** All right. I'd ask Mr. US Attorney

20 to summarize the indictment and give us the elements and

21 the penalties.

22         **MR. LIETZOW:** Your Honor, Mr. Flores is pleading

23 guilty to the first count of the second superseding

24 indictment that charges Mr. Flores with conspiracy to

25 possess with intent to distribute and distribution of

1 500 grams or more of methamphetamine and a quantity of

2 marijuana.

3          The elements of that offense, Your Honor, are

4 that, one, there was an agreement between two or more

5 persons to knowingly, intentionally, and unlawfully

6 possess with intent to distribute and distribute 500 grams

7 or more of a mixture or substance containing a detectable

8 amount of methamphetamine and a quantity of marijuana.

9 The second element is that the defendant knew of this

10 agreement or conspiracy.  And the third element is that

11 the defendant knowingly and voluntarily participated in or

12 became part of this agreement or conspiracy.

13          That carries a mandatory minimum of ten years

14 and a maximum of life in prison, a $10 million fine, five

15 years of supervised release, and a $100 special assessment

16 for the methamphetamine portion.  And it carries a maximum

17 term of five years in prison, $250,000 fine, two years of

18 supervised release, and a $100 special assessment for the

19 marijuana provision of that statute.

20          **THE COURT:**  Okay.

21          Mr. Flores, do you understand the nature of the

22 charges against you and the range of possible punishment?

23          **THE DEFENDANT:**  Yes, ma'am.

24          **THE COURT:**  Do you still want to plead guilty?

25          **THE DEFENDANT:**  Yes, ma'am.

1    **THE COURT:** Did you commit this offense?

2    **THE DEFENDANT:** Yes, ma'am.

3    **THE COURT:** I find the defendant fully

4    comprehends and understands the nature of the charges

5    against him and generally what elements the Government

6    would have to prove if a trial were held.

7    So I know there's a plea agreement. And I'd ask

8    Mr. US Attorney to go ahead and summarize that plea

9    agreement.

10    **MR. LIETZOW:** Thank you, Judge. The first

11    paragraph of the plea agreement discusses what I just put

12    on the record, which is the charges Mr. Flores is pleading

13    to, the elements, and the penalties associated.

14    The second paragraph details the monetary

15    penalties, such as special assessments, restitutions,

16    fines, and other payments that are due and payable

17    immediately.

18    The third paragraph indicates that provided

19    Mr. Flores complies with all the terms of the plea

20    agreement, the Government will move to dismiss the

21    remaining counts of the indictment at sentencing. It also

22    details that Mr. Flores is aware that relevant conduct of

23    the dismissed counts could affect the sentencing

24    guidelines.

25    Paragraph 4 indicates that Mr. Flores

1     understands that the Government's obligations are

2     contingent on Mr. Flores continuing to abide by federal

3     and state laws and the terms of his release agreement,

4     which is not relevant at this point.

5          Paragraph 5 states that Mr. Flores will

6     voluntarily surrender to and not contest the forfeiture of

7     any and all assets and property that could become relevant

8     as part of the sentencing.

9          Paragraph 6, Your Honor, is the 11(c)(1)(C)

10    provision.  And that states that if Mr. Flores complies

11    with the terms of the plea agreement, that he and the

12    Government agree that a sentence of 120 months is an

13    appropriate disposition of the outcome of this case.

14    Granted, Your Honor, the Government and Mr. Flores'

15    counsel I know understand that that is reliant on whether

16    Your Honor would accept that or not.  And we understand

17    that you will withhold judgment until the Presentence

18    Report has been prepared and will not know what you're

19    going to do until the time of sentencing.

20         **THE COURT:**  What paragraph was that again?

21         **MR. LIETZOW:**  Paragraph 6, Your Honor.

22         **THE COURT:**  And how many months was it?

23         **MR. LIETZOW:**  120.

24         **THE COURT:**  Okay.

25         **MR. LIETZOW:**  That's Page 7, Paragraph 6.

1          **THE COURT:** Okay. Thank you.

2          **MR. LIETZOW:** And I think it's also important to

3     note for the record that if Your Honor were not to go

4     along with that or disagree that that's an appropriate

5     resolution, that the parties could back out of this plea

6     agreement and come back to the table to renegotiate a more

7     appropriate resolution.

8          Paragraph 7 is a non-prosecution agreement. And

9     that states that the attorneys for the Government agree

10    that Mr. Flores will not be federally prosecuted in the

11    Eastern District of California for evidence obtained by

12    the Stanislas County Special Investigations Unit on

13    May 23rd, 2023, during the search of a residence

14    associated with the defendant so long as the defendant

15    complies with the terms of this plea agreement.

16         Paragraph 8 is the effective assistance

17    paragraph, Your Honor. And this indicates, as Mr. Flores

18    has already stated on the record, that he is satisfied

19    with the performance of counsel. And that he has met with

20    Mr. McCann on a sufficient number of basis to fully make

21    an informed decision today here in court.

22         Paragraph 9 is the limited appellate waiver,

23    Your Honor. And that indicates that Mr. Flores knows that

24    he has certain rights to appeal the conviction and/or

25    sentence, but he is giving up the ability to do that based

1   on this plea agreement.  But he also understands that that

2   does not apply to claims of ineffective assistance of

3   counsel, prosecutorial misconduct, or future changes in

4   the law that may affect Mr. Flores' sentence.

5           Paragraph 10, Mr. Flores is essentially waiving

6   his rights to receive records associated with this case.

7           And Paragraph 11 states that this written

8   agreement that all parties have signed is the entire

9   agreement, supersedes all preceding agreements, and

10  there's no secret or separate side agreements between the

11  parties.

12          **THE COURT:**  So, Mr. McCann, you have a copy of

13  it?

14          **MR. McCANN:**  I do, Your Honor.

15          **THE COURT:**  And Mr. Flores, is the document

16  Mr. McCann has, is that the plea agreement you entered

17  into in this case?  And is that the agreement that you

18  signed?

19          **THE DEFENDANT:**  Yes, ma'am.

20          **THE COURT:**  Have you read it?

21          **THE DEFENDANT:**  Yes, ma'am.

22          **THE COURT:**  Do you understand all of it?

23          **THE DEFENDANT:**  Yes, ma'am, I do.

24          **THE COURT:**  Did you discuss it with Mr. McCann

25  fully before you signed it?

1          **THE DEFENDANT:**  Yes, ma'am.

2          **THE COURT:**  Does it set out your entire

3    agreement with the US Government concerning the pending

4    charges?

5          **THE DEFENDANT:**  Yes, ma'am.

6          **THE COURT:**  So with regard to the Rule

7    11(c)(1)(C) stipulated sentence of 120 months to be

8    followed by the appropriate statutory term of supervised

9    release, have you discussed that fully with your lawyer?

10         **THE DEFENDANT:**  Yes, ma'am.

11         **THE COURT:**  And you discussed all of these

12   provisions fully with Mr. McCann?

13         **THE DEFENDANT:**  Yes, ma'am.

14         **THE COURT:**  And you entered into the Rule

15   11(c)(1)(C) agreement freely and voluntarily; is that

16   correct?

17         **THE DEFENDANT:**  Yes, ma'am.

18         **THE COURT:**  So how I handle 11(c)(1)(C)

19   stipulated sentences or provisions, as Mr. US Attorney

20   said, I defer my final decision on acceptance or rejection

21   of the plea agreement until I've had a chance to read your

22   Presentence Report.  If I should reject the plea

23   agreement, I would allow you to withdraw your plea.  If

24   you do not withdraw your plea, I could impose a more

25   severe sentence without being bound by the plea agreement.

1   Do you understand?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Do you understand that parole has

4   been abolished.  And if you're sentenced in accordance

5   with your plea agreement, you won't be released on parole?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  So I also need to say that in the

8   plea agreement you signed, Paragraph 6 says you're aware

9   that 18 USC 3742 and 28 USC 2255 afford every defendant

10  certain rights to contest a conviction or a sentence.  You

11  have acknowledged those rights, and in exchange for the

12  concessions made to you by the Government in the plea

13  agreement, you waive the right to contest either the

14  conviction or the sentence in any direct appeal or other

15  post-conviction action, including under 2255.  But the

16  waiver does not apply to claims of ineffective assistance

17  of counsel or prosecutorial misconduct that could be

18  raised under 2255 or future changes in the law that might

19  affect your sentence.  Are you aware that you're waiving

20  all those rights?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Has anyone promised you what

23  sentence you will receive?

24             THE DEFENDANT:  Um, just the plea agreement that

25  I got.

1          THE COURT:  Right.  Nobody else has promised you

2     for sure exactly what you're going to get?

3          THE DEFENDANT:  No.

4          THE COURT:  You still want to plead guilty?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Other than the plea agreement, other

7     than the plea agreement, has anyone promised you anything

8     or held out any hope of a reward to get you to plead

9     guilty?

10          THE DEFENDANT:  No, ma'am.

11          THE COURT:  Has anyone threatened you or

12     pressured you, intimidated you or used force to get you to

13     plead guilty?

14          THE DEFENDANT:  No, ma'am.

15          THE COURT:  Have you had enough time to decide

16     whether or not you do want to plead guilty?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Are you pleading guilty of your own

19     free will and accord?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  I'd ask Mr. US Attorney to summarize

22     the evidence for us.

23          MR. LIETZOW:  Judge, Mr. Flores was intercepted

24     during a Title III wire investigation that began in 2020

25     and spanned into 2022.  Mr. Flores was associated with a

1    drug trafficking organization that was mainly operating in

2    the Ten Mile area of North Charleston but also throughout

3    all of Charleston County.

4            Subsequent to Mr. Flores being intercepted on a

5    recorded phone call, investigators learned that Mr. Flores

6    lived in California and identified him as a source of

7    supply for one of the main drug distributors in that

8    organization who is named LaJustin Williams.  Cooperators

9    advised law enforcement that Flores was shipping numerous

10   pounds of meth and marijuana to Mr. Williams, who was then

11   partnering with another member of the drug trafficking

12   organization named Tyrone Peterson to sell it locally here

13   in Charleston and other places.

14           On one specific occasion, Your Honor,

15   Mr. Williams and Mr. Peterson concocted a scheme where

16   they were going to send marijuana and meth to Kuwait

17   overseas.  They felt as though they would have a higher

18   return on their investment by selling it where there was

19   higher profit margins.  So they sourced that marijuana and

20   that methamphetamine through Mr. Flores.

21           And they then took the meth and marijuana that

22   Mr. Flores provided them, packaged it up, and then did

23   send it to Kuwait.  Unfortunately for them, that package

24   was intercepted by law enforcement and it was found to

25   contain 1,739 grams of meth and 441 grams of marijuana.

1    Those substances were lab confirmed to be controlled

2    substances and weigh the weight that I stated.

3            Once that package was intercepted, cooperators

4    confirmed that Mr. Flores did provide those drugs.  And

5    phone calls that were intercepted between Mr. Flores and

6    Mr. Williams indicated that they did have a relationship

7    that was centered around narcotics trafficking.

8            In one intercepted phone call, they discussed --

9    they being Mr. Flores and Mr. Williams discussed that

10   Mr. Williams needed approximately 8 pounds of

11   methamphetamine from Mr. Flores so that he could send it

12   to his people overseas.  Mr. Flores indicated that he

13   would need to source that from somebody else and indicated

14   that he did not have the money personally to front that

15   and he would need other people to buy in to that agreement

16   in order to be able to provide Mr. Williams with that much

17   methamphetamine.

18           So between the cooperator statements and the

19   phone calls that were intercepted, investigators were able

20   to determine and corroborate that Mr. Flores was providing

21   local individuals with meth and marijuana.

22           I will say though -- I will also say that the

23   number Mr. Flores was intercepted on, investigators served

24   a subpoena to that phone company and that number was

25   confirmed to belong to Mr. Flores.  So that's part of how

1    they were able to identify Mr. Flores.

2          Mr. Williams, the cooperator, also allowed

3    investigators to search his phone.  And they observed

4    several messages between Mr. Flores and Mr. Williams

5    further corroborating that they had this illegal agreement

6    to distribute narcotics.

7          And Mr. Flores was stopped in Oklahoma and

8    searched in a separate incident.  Law enforcement out in

9    Oklahoma was able to recover a phone.  And that was the

10   phone Mr. Flores was using to communicate with

11   Mr. Williams.  And they did a search of that phone and

12   further corroborated the relationship between the two

13   parties.

14         In total, Mr. Flores is alleged to have provided

15   4.8 kilos of methamphetamine and an unknown total quantity

16   of marijuana.

17         There was also a May 23rd, 2023, search on

18   Mr. Flores' residence in California that may be considered

19   relevant conduct.  But as we've stated on the record, that

20   relevant conduct may or may not be applicable based on

21   whether Your Honor accepts the 11(c)(1)(C).

22         **THE COURT:**  So, Mr. Flores, do you agree with

23   the prosecutor's summary of what you did?

24         **THE DEFENDANT:**  Yes, ma'am.

25         **THE COURT:**  Do you have any questions for him

1    before we go on?

2             THE DEFENDANT:  No, ma'am.

3             THE COURT:  Have you understood all my

4    questions?

5             THE DEFENDANT:  Yes, ma'am.

6             THE COURT:  Is there anything you want to ask me

7    before we go on?

8             THE DEFENDANT:  No, ma'am.

9             THE COURT:  How do you wish to plead?

10            THE DEFENDANT:  Guilty.

11            THE COURT:  Are you guilty?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  It is the finding of the Court in

14   the United States vs. Daniel Flores that the defendant is

15   fully competent and capable of entering an informed plea.

16   And his plea is a knowing and voluntary plea supported by

17   an independent basis in fact containing each of the

18   essential elements of the offense.  So the plea is not

19   quite accepted.  And the plea is -- will be ultimately

20   accepted possibly at the time of sentencing.  But it's

21   accepted for purposes of today.

22            So it looks like you're detained.  But let me

23   just say a written Presentence Report will be prepared by

24   the US Probation Office to assist me at sentencing.  And

25   you're going to be asked to give information for that

1  report.  Your lawyer can be present during questioning by

2  probation if you wish.  And y'all will be able to read the

3  Presentence Report and file any objections to it.  And

4  you'll have a chance to speak on your own behalf at

5  sentencing.  Okay?

6          **THE DEFENDANT:**  Yes, ma'am, Judge.

7          **THE COURT:**  Thank you.  All right.

8      (WHEREUPON, the defendant signed the plea.)

9      (WHEREUPON, court was adjourned at 10:58 AM)

10                          ***

11  I certify that the foregoing is a correct transcript from

12  the record of proceedings in the above-entitled matter.

13      s/Karen E. Martin                    12/20/2024

       _____      _____

14  Karen E. Martin, RMR, CRR          Date

15

16

17

18

19

20

21

22

23

24

25